CAPE FEAR STEAMBOAT COMPANY *vs.* BARTHOLOMESS, sheriff, *et al.*

1. When the sheriff seizes property under a *fi. fa.*, if he turns it over to the defendant to keep, he does so at his peril ; and this applies as well to a mortgage *fi. fa.* as to a *fi. fa.* founded on a general judgment.

2. In such case the sheriff is not entitled to fees for watching and guarding the property until the sale, and hence cannot transfer any right to such fees to defendant in *fi. fa.*

3. If the defendant, in caring for such property, has incurred necessary expenses, without making any profit, equity will allow him such actual expenses ; but it will not allow him more on the ground that the fees of the sheriff, had he held possession, would have been more.

(*a.*) Even if equity would ordinarily allow such fees, it will not do so where the property sells for much less than the amount of the *fi. fa.* In that event, it will apply the fees so acquired as a credit on the *fi. fa.*

Equity. Sheriffs. Executions. Levy and Sale. Fees. Before Judge FLEMING. Chatham County. At Chambers. August 2, 1881

Reported in the decision.

JACKSON, LAWTON & BASINGER, for plaintiff in error.

CHISHOLM & ERWIN;   A. P. & S. B. ADAMS, for defend-
ant.

CRAWFORD, Justice.

The Cape ·Fear Steamboat Company, on the 5th day
of June, 1871, foreclosed a mortgage for $26,000 00, be-
sides interest, on a debt due to the said company by Rob-
ert Erwin and Charles S. Hardee, partners, using the firm
name of Erwin & Hardee, for the purchase of the steamboat
·Governor Worth, and upon which the aforesaid mortgage
was given.   The boat was brought to sale on the 7th day
of September, 1871, and was bid off by the steamboat
company at the sum of $13,000 00.

The sheriff refused to make titles or deliver the boat to
the said company until it obligated itself to place in his
hands the sum of $515.00, claimed by the said sheriff for
watchmen's fees and dockage for the said boat.   The com-
pany not recognizing the justice or legality of this claim,
filed its bill in equity against the sheriff and Robert Erwin,
alleging that this sum of money was claimed and demanded
that it might be paid over by the sheriff to Robert Erwin
one of the defendants in the mortgage *fi. fa.,* in whose
possession the boat had been left, after, just as before, the
levy, with all her machinery, tackle, furniture, etc., from
the date of the levy to the day of the sale.   The com-
pany alleged that the said sheriff had no right to leave
the said mortgaged property thus levied upon in the hands
of one of the defendants in the mortgage *fi. fa.,* and that
he was not authorized to allow the said defendant, by his
keeping the said property, to charge or demand the enor-
mous rates claimed for the watching and dockage, when the
same was so largely in excess of what was actually paid
out by him.

The complainant further alleged that the watchmen
really performing that duty were only to receive $50.00
per month, and that he who was at first so employed

had died, and the second one had already been paid the sum due him for that service. And it was also alleged that the dockage actually paid was only $47.00, a part of which had been paid by the defendant, Erwin, and the balance by the complainant. The insolvency of the defendants in the mortgage *fi. fa.* was also alleged, as well as that they were largely indebted to complainant on the said *fi. fa.* The prayer was for a decree setting aside an *ex parte* order granted by the judge for the payment of the aforesaid sum of $515.00, and that they pay the amount of damages sustained by complainant on account of the said boat having been left in the possession of the defendant, Erwin.

The answer of the sheriff denied leaving the boat absolutely in the charge or possession of Erwin, or any other person, but averred that he took possession and control, and employed such persons as he saw fit to watch the same and keep it from all injury, though at no time turning over the charge or possession as alleged by complainant. He also denied having employed the persons named as watchmen, or that the charges were unreasonable, but alleged, on the contrary, that they were reasonable and moderate, and such as he was entitled to have for the services rendered, and he prayed for their payment.

The defendant, Erwin, denied that he had the same possession or control of the boat as before the levy, but that the sheriff had, and that he was only the agent of the sheriff. He further denied any indebtedness to the complainant.

Upon the hearing of the cause, the jury, under the evidence and charge of the court, found for the defendant; and the complainant being refused a new trial on the grounds alleged in his motion therefor, complains of the same as error.

Without reference to the various grounds of error complained of, we proceed directly to the consideration of the main point in the case.

The record shows that after the levy by the sheriff on this steamboat, the possession thereof was continued in Robert Erwin, one of the defendants in the mortgage *fi. fa.* The character of that possession is claimed, both by himself and the sheriff, to be as the agent of the latter, with the duty upon him to keep her free from damage or injury, and to do which both a watchman and dockage were necessary. Admitting this to be true, does it follow as a matter of law that the sheriff may leave property levied upon in the hands of the debtor and defendant in the *fi. fa.*, and at the same time allow him to charge fees therefor? We cannot recognize the right of the defendant in *fi. fa.* to compensation for such service. But it is insisted that the judgment and *fi. fa.* in this case was against the property and not against the owners. Whilst this is technically true, they are still the owners of the property, and they are the mortgagors as well as the defendants in the *fi. fa.*, although it is limited to the particular property mortgaged. They stand to that specific property precisely in the same way that they would to their general estate with a general judgment against them, and the same rules are applicable to both cases, and, as we hold, are as follows:

If the sheriff, when he seizes property of the defendant under execution, turns it over to him, he does so at his peril, and this applies as well to mortgage *fi. fas in rem* as to general jugments.

In such case the sheriff is not entiled to fees for watching and guarding the property until the sale, and consequently cannot transfer any right to such fees to the defendant in *fi. fa.*

If the defendant, in caring for such property, has incurred necessary expenses, without making any profit out of the property whilst he held it from the date of the levy to the day of the sale, equity will allow him such actual expenses so incurred; but it will not allow him more, because the fees of the sheriff might have amounted to more than the expenses he actually incurred.

Even if equity would grant the defendant such fees ordinarily, it will not do so when the property sold under the *fi. fa.* brought into court much less than the amount of the *fi. fa.;* but it would apply the fees so acquired by the defendant, and to be paid by the plaintiff who purchased the property at sheriff's sale, to a credit on the judgment, on the principle of equitable set-off

To require the plaintiff in *fi. fa.* to pay over any part of the purchase money to the defendant in *fi. fa.,* when the *fi. fa.* itself was unsatisfied, would be inequitable and unjust, and certainly so, beyond the amount actually paid out by the defendant.

Judgment reversed.